UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PRINCE CAFÉ RESTAURANT, INC. et al.,<br><br>    Defendants. | Case No.: 2:20-cv-01563-JAD-NJK<br><br>**REPORT AND RECOMMENDATION**<br><br>[Docket No. 12] |

On November 18, 2021, Plaintiff filed a motion for entry of default judgment. Docket No. 12. On April 21, 2022, the motion was referred to the undersigned Magistrate Judge. The motion is properly resolved without a hearing. *See* LR 78-1. For the reasons discussed below, the undersigned **RECOMMENDS** that the motion for default judgment be **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

This signal-piracy case arises out of a commercial licensing dispute between Plaintiff and Defendant Prince Café Restaurant, Inc, d/b/a Prince Café. Docket No. 1. Defendants Nebojsa Krkeljas, Sinisa Krkeljas, and Veseljko Krkeljas are officers, shareholders, directors, members, or principals of Defendant Prince Café. *Id.* at 2. The dispute arises out of two instances where Defendants illegally screened Ultimate Fighting Championship matches, for which Plaintiff holds the exclusive commercial licensing rights, in their restaurant Prince Café without paying to screen the matches. *Id.* at 2-3.

Plaintiff Joe Hand Promotions, Inc. is a company that specializes in licensing and distributing "premier sporting events" to commercial establishments. *Id.* at 2. Plaintiff holds the exclusive commercial licensing rights for two Ultimate Fighting Championship matches: Program 241: Cormier v. Miocic 2, broadcast on August 17, 2019, and Program 242: Khabib v. Porier, broadcast on September 7, 2019. *Id.* Plaintiff licenses the programs to commercial establishments

1

after these establishments pay the proper commercial licensing fee, which is set based on the maximum occupancy of the establishment. *Id.* at 3; Docket No. 12-2 at 3-4. Plaintiff submits that, on the night of both programs, Defendants did not pay the commercial licensing fee, but instead used an illegal Internet streaming service or a residential streaming service to exhibit the two programs at Café Prince, thus infringing Plaintiff's commercial licensing rights. Docket No. 1 at 2-3. Plaintiff submits that Defendants did this to avoid paying the commercial license rate and exhibited the programs for the commercial purpose of attracting paying customers and, by doing so, wrongfully benefitted financially by infringing on Plaintiff's rights. *Id.* at 3-4.

Plaintiff's complaint alleges violations of the Federal Communications Act, 47 U.S.C. §§ 553 and 605 *et seq.*, and the Copyright Act, 17 U.S.C. § 501 *et seq*. In its complaint, Plaintiff seeks monetary damages against Defendants joint and severally. *Id.* at 6. Specifically, Plaintiff seeks statutory damages of up to the amount of $110,000 for each willful violation of 47 U.S.C. § 605 or, in the alternative, statutory damages of up to $60,000 for each willful violation of 47 U.S.C. § 553. *Id.* Plaintiff also seeks statutory damages of up to $150,000 for each willful violation of 17 U.S.C. § 501. Plaintiff finally seeks attorneys' fees, interests, and costs of suit pursuant to 47 U.S.C. §§ 553(c)(2)(C), 605(e)(3)(B)(iii), and 17 U.S.C. § 505. *Id.*

Plaintiff filed the instant action on August 21, 2020. Docket No. 1. After effectuating service and waiting the required 21-day period required by the Federal Rules of Civil Procedure without any action or responsive pleading by Defendants, Plaintiff sought an entry of default. Docket No. 10. The Clerk entered default on September 10, 2021. Docket No. 11. Plaintiff now seeks entry of default judgment against Defendants and the award of $40,000 in statutory damages, $1,050 in costs, and attorneys' fees. Docket No. 12.

**II.   THE COURT'S JURISDICTION**

"When entry of default judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). To ensure that any entered default judgment will not later be attacked as void, the Court must

"determine whether it has the power . . . to enter the judgment in the first place." *Id.* Here, both subject matter jurisdiction and personal jurisdiction are satisfied.

The Court's personal jurisdiction over a defendant is generally a waivable defense that the Court does not raise *sua sponte*. *See* Fed. R. Civ. P. 12(h)(1). Nonetheless, "[w]hen entry of default judgment is sought against a party that has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Thus, after giving Plaintiff notice and an opportunity to assert jurisdictional facts, the Court may dismiss an action for lack of personal jurisdiction. *See id.* at 712–13.

Here, the Court has both subject matter jurisdiction and personal jurisdiction. The Court has subject matter jurisdiction pursuant to the Court's federal question jurisdiction, set forth in 28 U.S.C. § 1331, and the Court's exclusive original jurisdiction for all suits related to copyrights, set forth in 28 U.S.C. § 1338(a). Plaintiff's complaint alleges violations of the Copyright Act of the United States, 17 U.S.C. § 101 *et seq.*, and provisions of the Communications Act of 1934, 47 U.S.C. §§ 553, 605. The Court also has personal jurisdiction over all the Defendants. Defendant Prince Café Restaurant, Inc. is incorporated in Nevada. Docket Nos. 1 at 1; 12-8. Defendants Nebojsa Krkeljas, Sinisa Krkeljas, and Veseljko Krkeljas are the owners and officers of Prince Café Restaurant, Inc. and are all domiciled in Nevada. *Id.* Moreover, service was properly effectuated on all Defendants in the forum state. *See* Docket Nos. 5, 6, 7, 8. The Court finds that it has been provided sufficient evidence to establish its jurisdiction and will, therefore, proceed to determining whether entering default judgment is warranted in this case.

### III. DEFAULT JUDGMENT

Obtaining default judgment is a two-step process set forth by Rule 55 of the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the entry of a default, a court may enter a default judgment. Fed. R. Civ. P. 55(b).

A defendant's default alone does not entitle the movant to a court-ordered judgment. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam); *see also PepsiCo., Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The choice of whether to enter default judgment lies within the discretion of the Court. *Aldabe*, 616 F.2d at 1092. In determining whether default judgment is appropriate, the Court considers the seven factors set forth in *Eitel v. McCool*.

The Court must consider: (1) the possibility of prejudice to plaintiff if default judgment is not entered; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72. In evaluating these factors, The Court will take as true all the factual allegations in the complaint, except those relating to the amount of damages. *See e.g., TeleVideo Sys., Inc. v. Heidenthal*, 862 F.2d 915, 917-18 (9th Cir. 1987) (per curiam).

As discussed below, the Court finds that the *Eitel* factors weigh in Plaintiff's favor.

1. <u>The possibility of prejudice to the Plaintiff</u>

The first *Eitel* factor weighs in favor of granting default judgment. Defendants' failure to respond to Plaintiff's complaint or otherwise appear in this matter has prejudiced Plaintiff's ability to pursue its claim on the merits. *See e.g., Markley v. Gleeson & Assocs.*, 2021 U.S. Dist. LEXIS 236559, at *4 (D. Nev. Nov. 9, 2021), *report and recommendation adopted by* 2021 U.S. Dist. LEXIS (D. Nev. Dec. 8, 2021); *Tropicana Ent., Inc. v. N3A Mfg., Inc.*, 2018 WL 2088871 (D. Nev. May 3, 2018).

2. <u>The merits of the claims and the sufficiency of the complaint</u>

The second and third *Eitel* factors look at the underlying claims being raised by the party seeking default and whether the plaintiff "state[s] a claim on which the plaintiff can recover." *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8. The Court is required to accept the factual allegations set forth in the complaint as true upon the entry of default. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1986).

Section 605 of the Communications Act "prohibits the unauthorized receipt and use of radio communications for one's own benefit or for the benefit of another" not entitled to receipt.

4

*DirecTV v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) (citing 47 U.S.C. § 605(a)). The Ninth Circuit construes "communications" to "include satellite television signals." *Id.* (citing *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 926 (9th Cir. 2006); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 911-12 (6th Cir. 2001)). To establish a § 605 violation, Plaintiff must show that it had a proprietary interest in each program; that Defendants unlawfully intercepted, received, published, divulged, displayed, and/or exhibit the program at their establishment; and that such display was done without Plaintiff's authorization. 47 U.S.C. § 605. *See also J&J Sports Prods. v. Chikiss Botanas N' Beer*, 2020 U.S. Dist. LEXIS 88431, at *3 (D. Nev May 2020).

Plaintiff has exclusive rights to broadcast the two programs commercially, Defendants unlawfully intercepted a stream of the program and broadcast it at the Café on two separate occasions, and Plaintiff did not authorize Café Prince to commercially exhibit either program. Taking the facts set forth in the complaint as true and considering the further information provided in the application for default judgment, the Court finds that each of these elements is satisfied, and that Plaintiff's complaint sufficiently pleads meritorious claims. Thus, the second and third *Eitel* factors weigh in favor of granting default judgment for Plaintiff.

    3. <u>The amount of money at stake</u>

The fourth *Eitel* factor favors default judgment. Default judgment is disfavored when "the sum of money at stake is completely disproportionate or inappropriate." *Twentieth Century Fox Film Corp. v. Streeter*, 438 F.Supp.2d 1065, 1071 (D. Ariz. 2006). Plaintiff seeks $10,000 for statutory damages for pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $ 30,000 in statutory damages for a willful act in violation of 47 U.S.C. § 605(e)(3)(C)(ii), costs in the amount of $1,050, and attorneys' fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). Docket No. 12 at 15. Since Congress has expressly authorized a court to award statutory damages for up to $10,000 per willful violation of 47 U.S.C. § 605(a) pursuant to § 605(e)(3)(C)(i)(II); statutory damages of up to $100,000 pursuant to § 605(e)(3)(C)(ii), and attorneys' fees and costs under § 605(e)(3)(B)(iii), the Court finds that this amount, which is below the maximum allowable award, is not *per se* unreasonable such that it would preclude or weigh against the entry of default judgment. *Cf. DISH Network L.L.C. v. Trujillo*, 2019 U.S. Dist. LEXIS 184172, at *5 (D. Nev. Sept. 27, 2019), *report and*

*recommendation adopted by* 2019 U.S. Dist. LEXIS 183925 (D. Nev. Oct. 23, 2019) (citing *Dish Network L.L.C. v. Gonzalez*, 2013 WL 2991040, at *4 (E.D. Cal. June 14, 2013)).

### 4. The possibility of a dispute concerning material facts

The fifth *Eitel* factor weighs in favor of granting default judgment. The Court finds that the complaint states plausible claims under *Iqbal*, which are supported by the record. Failing to respond to a pleading is treated as an admission of the contents of that pleading under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8(b)(6). Since Defendants failed to respond to Plaintiff's complaint, no dispute exists as to any of the material facts set forth in Plaintiff's complaint. Defendants are deemed to have admitted all the facts and the Court is required to take all well-pleaded facts in the complaint as true after the entry of default, except those relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1986).

### 5. Whether default was due to excusable neglect

The sixth *Eitel* factor also weighs in favor of granting default judgment. This factor favors entry of default judgment when a defendant has been properly served or Plaintiff shows that a defendant is aware of the lawsuit and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Here, Plaintiff effectuated service on Defendants on November 10, 2020. *See* Docket Nos. 5, 6, 7, 8. Defendants have yet to file a responsive pleading or appear in this case in any manner. *See* Docket. Defendants have not sought an extension or provided the Court with any reason to believe that excusable neglect exists for their failure to engage in the ongoing litigation. The Court finds that this non-participation without justification demonstrates that no excusable neglect exists.

### 6. The strong public policy favoring decisions on the merits

The seventh *Eitel* factor weighs against entering default judgment. There is a strong preference against default judgment and "cases should be decided on the merits wherever reasonably possible." *Eitel*, 782 F.2d at 1472.

In sum, each *Eitel* factor, except one, weighs in favor of default judgment. Therefore, the Court finds that the entry of default judgment against Defendants is appropriate.

. . . .

6

## IV. DAMAGES

A plaintiff must prove all damages sought in the complaint and the damages may not "differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). While Courts may conduct hearings to determine damages when entering default judgment, such hearings are discretionary. *See* Fed. R. Civ. P. 55 (b)(2)(B). When Plaintiff has submitted sufficient evidence to allow the Court to calculate damages within the applicable statutory limits under 47 U.S.C. § 605, no hearing is required. *Garden City Boxing Club, Inc. v. Aranda*, 384 Fed.Appx. 688, 689 (9th Cir. 2010). In its motion for default judgment, Plaintiff seeks an award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) and 407 U.S.C. § 605(e)(3)(c)(ii). Docket No. 12 at 15. As the Court has established that default judgment is warranted as to two violations of § 605, the question is what damages are appropriate under the law. The Ninth Circuit has stated that, when calculating statutory damages awards under § 605 based upon the illegal interception and display of pay-per-view boxing matches, as is the case here, district courts should attempt to impose "a sanction that deters but does not destroy." *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999).

47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes an award of statutory damages of "not less than $1,000 or more than $10,000" for each violation of § 605(a) "as the Court considers just." Plaintiff seeks $10,000 for two violations of § 605(a). 47 U.S.C. § 605(e)(3)(C)(ii) authorizes enhanced statutory damages when the violations of 605(a) are committed "willfully and for purposes of direct or indirect commercial advantage or financial gain." The Court retains discretion to enhance the award of statutory damages under § 605(e)(3)(C)(ii).

In its complaint, Plaintiff sought $110,000 in statutory damages for each individual violation of § 605 or, alternatively $60,000 for each violation of 47 U.S.C. § 553 committed for the purpose of commercial advantage. Docket No. 1 at 6. Plaintiff also sought statutory damages for each violation of 17 U.S.C. § 501 of up to $150,000 in attorneys' fees and costs. *Id.* In its motion for default judgment, Plaintiff asks the Court to award statutory damages of $10,000

7

pursuant to § 605(e)(3)(C)(i)(II) and $30,000 pursuant to § 605(e)(3)(C)(ii) plus relevant attorneys' fees and costs. Docket No. 12 at 15. The Court will discuss each request in turn.

### A. Statutory Damages Under 47 U.S.C § 605(e)(3)(C)(i)(II)

Plaintiff seeks $10,000 in statutory damages pursuant to § 605(e)(3)(C)(i)(II). Since Plaintiff has established two distinct violations of § 605, this request amounts to $5,000 per violation. Here, the facts establish a single screening of each of the programs at the restaurant in question, which had a maximum occupancy of around 50 individuals. Docket No. 12-2 at 3. The screening fee charged to show a program in a commercial establishment of this size was $866. Docket No. 12-4 at 2. Defendants not only illegally screened unlicensed programs twice but advertised the illegal screenings on social media to attract customers to their establishment. Docket No. 12-7. Considering these facts, the Court finds that the requested statutory damages pursuant to § 605(e)(3)(C)(i)(II) seem reasonable. Accordingly, the Court awards a total of $10,000 in statutory damages for these two violations pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

### B. Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(ii)

Plaintiff also asks the Court to award $30,000 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) generally are supposed to deter similar acts being committed in the future. In determining whether enhanced statutory violations are just, the Court can consider a nonexclusive list of factors, including: (1) whether Defendants are repeat violators of the Communications Act; (2) the extent of Defendants' unlawful monetary gains; (3) Plaintiff's actual damages; (4) whether Defendants advertised the broadcast of the intercepted program; (5) whether Defendants charged a cover fee to view the intercepted program; and (6) whether Defendants charged a premium for food or drink for the event. *J & J Sports Prods. v. Golden Penny Indus.*, 2020 U.S. Dist. LEXIS 178994, at *20-21 (D. Nev. Sept. 11, 2020), *report and recommendation adopted by* 2020 U.S. Dist. LEXIS 177428 (D. Nev. Sept. 26, 2020) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Here, Defendants broadcast the two programs willfully and for the purposes of commercial advantage and/or private financial gain. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906

(9th Cir. 2002); *TeleVideo Sys.*, 826 at 917-18.  Defendants could not have innocently accessed the broadcast of the program given the complexity of intercepting transmissions.  Docket Nos. 12 at 12; 12-2 at 5.  Further, Defendants broadcast the two programs for financial gain, advertised the screenings on social media, and displayed the broadcasts on a prominently-featured 65-inch television that could be seen from the entrance of the restaurant, the dining area, and the bar. Docket Nos. 12-5 at 2, 12-7.  The Court finds that Plaintiff has established willfulness and commercial advantage for the purpose of damages.  *See Ent. by J & J, Inc. v. Al-Waha Enters.*, 219 F.Supp.2d 769, 777 (S.D. Tex. 2002).  *See also Chikiss Botanas N' Beer*, 2020 U.S. Dist. LEXIS 88431, at *6-7 (citing *J & J Sports Prods., Inc. v. Pollard*, 2011 WL 777931, at *2 (E. D. Cal. Feb. 28, 2011)); *Golden Penny Indus.*, 2020 U.S. Dist. LEXIS 178994, at *20-21.

   The Court is persuaded that enhanced statutory damages are warranted in this case, but not to the extent requested by Plaintiff.  The facts establish that the restaurant did not charge a cover for the event, and nothing suggests that Defendants charged a premium for food or drinks during the screening.  Docket No. 12-5 at 2-3.  Moreover, although the maximum occupancy of the café was 50, there were only approximately 16 people attending one of the screenings.  *Id.*  No information has been provided as to the number of people present at the second screening.  Plaintiff would have made $866 per screening event had the commercial licensing fee been paid, totaling actual damages of $1,732.  Docket No. 12-4 at 2.  Given the lack of Defendants' participation in this litigation, it is impossible for the Court to adequately surmise the extent of Defendants' unlawful monetary gain due to these two screenings.  The Court does note, however, that Plaintiff paid substantial costs to obtain the licensing rights and the proliferation of piracy of the kind at issue here diminishes Plaintiff's profit returns on those rights.  *See* Docket No. 12-2 at 5-6.

   Based on these facts and considering the Ninth Circuit's guidance that enhanced statutory damages in this context should deter but not destroy, *Lake Alice Bar*, 168 F.3d at 350, the undersigned recommends that enhanced statutory damages be awarded in the amount of $7,500, an amount one and a half times the amount awarded per violation under § 605(e)(3)(C)(i)(II).  The

9

Court finds that this amount is sufficient to deter for future acts by Defendants but not to destroy them and is comparable to other awards Plaintiff has received in similar circumstances.[1]

### C. Attorneys' Fees and Costs

Attorneys' fees in this case are not only authorized, but required by 47 U.S.C. § 605(e)(3)(B)(iii). U.S.C. § 605(e)(3)(B)(iii) mandates the recovery of "full costs, including reasonable attorneys' fees to an aggrieved party who prevails" on establishing a violation of § 605(a). Plaintiff submits its costs totaled $1,050 in prosecuting this action for filing the action and effectuating service. Docket No. 12 at 14-15. *See also* Docket Nos. 12-10, 12-11. Plaintiff asks the Court for permission to "file a Fee Affidavit for attorneys' fees from Defendants upon final judgment." *Id.* at 14. The Court **GRANTS** Plaintiff's request and recommends an award of $1,050 in costs. Plaintiff must file a motion for attorneys' fees, in compliance with Local Rule 54-14, within 14 days of the entry of final judgment in this matter.

## V.   CONCLUSION

Accordingly, for the reasons stated above, the Court **RECOMMENDS** that

1. Plaintiff's motion for entry of default judgment, Docket No. 12, be **GRANTED** in part and **DENIED** in part; and
2. Judgment be entered against Defendants as follows:
   a. $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);
   b. $7,500 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

---

[1] *See, e.g., Joe Hand Promotions Inc. v. Alhamedany*, 2019 U.S. Dist. LEXIS 157740, at *8-11 (D. Ariz. Aug. 22, 2019), *report and recommendation adopted by* 2019 U.S. Dist. LEXIS 156759 (D. Ariz. Sept. 13, 2019) (awarding $10,000 in statutory damages and $20,000 in enhanced damages for a single § 605 violation); *Joe Hand Promotions, Inc. v. Garcia-Nunez*, 2019 U.S. Dist. LEXIS 97488, at *6-8 (D. Or. June 11, 2019) (awarding $3,000 in statutory damages and $10,000 in enhanced damages for a single § 605 violation); *Joe Hand Promotions v. Hashem*, 2021 U.S. Dist. LEXIS 207368, at *9-16 (E.D. Tenn. Oct. 27, 2021) (awarding $3,700 in statutory damages and $9,250 in enhanced damages total for two § 605 violation); *Joe Hand Promotions, Inc. v. Pacheco*, 2019 U.S. Dist. LEXIS 87432, at *12-14 (S.D. Cal. May 23, 2019) (awarding $3,700 in statutory damages and $1,500 in enhanced damages for a single § 605 violation); *Joe Hand Promotions, Inc. v. Chavez*, 2018 U.S. Dist. LEXIS 106296, at * (D. Or. June 25, 2018) (awarding $10,000 in statutory damages and $10,000 in enhanced damages for a single § 605 violation); *Joe Hand Promotions Inc. v. Garcia*, 546 F.Supp.2d 383, 385-86 (W.D. Tex. 2008) (awarding $2,625 in statutory damages and $10,000 in enhanced damages for a single § 605 violation).

   c. $1,050 in costs;

   d. Attorneys' fees, to be determined by the Court.

IT IS SO ORDERED.

Dated: April 22, 2022

                     _____
                     Nancy J. Koppe
                     United States Magistrate Judge

## **NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).